JAMES SOBCZAK *et al.*, Plaintiffs-Appellees, *v.* MICHAEL E. WHITTEN *et al.*, d/b/a Freeburg Recreation Park Committee, Defendants.—(GOVERNMENT EMPLOYEES INSURANCE COMPANY, Intervenor-Appellant.)

Fifth District    No. 78-388

Opinion filed July 23, 1979.

Michael B. Constance and Edward J. Szewczyk, both of Belleville, for appellant.

Norton, Bonifield and Associates, P. C., of Belleville (David M. Uhler, of counsel), for appellees.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of St. Clair County, arising from the settlement of an automobile accident in which the plaintiffs, James Sobczak, Jan Sobczak, Bruce Shelton and John Miller, sustained personal injuries. James Sobczak, the driver of the automobile, was insured by Government Employees Insurance Company. Michael Whitten, the defendant driver of the other automobile involved in the collision, was insured by Dairyland Insurance Company. Government Employees Insurance Company, intervenor-appellant, hereinafter referred to as GEICO, appeals from an order granting plaintiffs' motion to reconsider an earlier order of the court which disbursed $20,000 previously deposited with the court by Dairyland without allocating any of that amount to plaintiffs as attorneys' fees. In granting the motion to reconsider, the court ordered a disbursement of $6,246.18 to be paid to plaintiffs' attorneys out of the $20,000 deposited with the court, thereby reversing its previous order. GEICO appeals, contending the trial court erred in granting plaintiffs' motion to reconsider, in applying the "fund doctrine" to award attorneys' fees, and awarding an excessive amount of attorneys' fees.

On September 22, 1976, plaintiffs, by their attorneys, filed a complaint for personal injuries against the defendant alleging that defendant negligently collided with plaintiffs' vehicle. Sometime between October 19, 1976, and November 11, 1976, intervenor-insurer GEICO sent subrogation notices to Dairyland. On December 20, 1976, the defendant filed a motion requesting leave to pay the monetary equivalent

of the stated policy amounts into the court. In support of this motion, the defendant stated that counsel for plaintiffs and Dairyland had agreed that the monetary equivalent of the stated policy amounts should be paid into the court and the plaintiffs would then execute covenants not to sue and would agree to hold the defendant harmless for indemnity arising out of other suits which plaintiffs might file. That same day Dairyland deposited $20,000 into the court.

On March 14, 1977, plaintiffs filed a motion requesting a hearing to allow plaintiffs to prove their damages and to allow GEICO to present their claim to the proceeds. The motion further requested the court to disburse the proceeds.

On March 31, 1977, GEICO filed a petition to intervene and a motion for disbursement of the $20,000. This petition alleged that pursuant to an insurance contract, GEICO had paid $15,439.67 to the plaintiffs for medical expenses incurred because of the injuries sustained in the automobile accident with Whitten and that GEICO anticipated that it would incur an additional $6000 to $7000 in medical expenses. The petition further alleged that GEICO was plaintiffs' subrogee and had a right to the proceeds paid by Dairyland into the court. The motion for disbursement requested that all the proceeds be paid to GEICO in the amount of its present subrogation interest with the remainder held unpaid until it was determined whether further payments would be made by GEICO. On November 8, 1977, the court granted the motions to disburse filed by the plaintiffs and GEICO with a detailed order of distribution to follow with a stipulation of fact to be submitted by plaintiffs and GEICO on the issue of attorneys' fees.

On January 27, 1978, the plaintiffs filed an amended motion for disbursement, requesting an award of "appropriate fees" for plaintiffs' attorneys. The following stipulation of fact, supported by documentation, was filed simultaneously:

"STIPULATION OF FACT

Now come the plaintiffs, James Sobczak, Jan Sobczak, Bruce Shelton and John Miller, by their attorneys, * * *, and the intervener insurer, Government Employees Insurance Company, a corporation by * * *, its attorneys, and stipulate to the following chronology and written communications which are attached and incorporated herein:

1. September 29, 1976. The Claims Adjuster for defendant's insurer acknowledged plaintiffs attorney's lien (Exhibit 1).

2. October 5, 1976. The Claims Adjuster of defendant's insurer acknowledged plaintiffs' attorney's lien and requested further medical in support of the plaintiffs' claim (Exhibit 2).

3. October 22, 1976. Plaintiffs' attorney asked for a statement from the defendant and requested defendant's insurer tender the policy into court (Exhibit 3).

4. October 29, 1976. The Claims Adjuster for defendant's insurer agreed to allow a statement from the defendant in return for a Covenant Not to Sue (Exhibit 4).

5. November 2, 1976. Plaintiffs' attorney forwarded supporting medical to the defendant's adjuster and again requested that the Twenty Thousand Dollar ($20,000.00) policy be tendered into court in return for a Covenant Not to Sue (Exhibit 5).

6. November 5, 1976. The Claims Adjuster for defendant's insurer again acknowledged the terms of the Covenant Not to Sue entered by the plaintiffs' attorney and the matter was being turned over to the law firm of * * * for interpleader handling (Exhibit 6).

7. November 18, 1976. Defendant's attorney confirmed the understanding between plaintiffs' attorney and defendant's insurer that the insurer's policy be tendered into court and that the defendant be dismissed by way of a Covenant Not to Sue (Exhibit 7).

8. December 10, 1976. Plaintiffs' attorney confirmed discussions with defendant's attorney to tender the full amount of defendant's policy into court; if this was not done within ten days, then settlement negotiations would be terminated (Exhibit 8).

9. December 29, 1976. Within the ten days requested in plaintiffs' attorney's letter of December 10, 1976, defendant's attorney deposited Twenty Thousand Dollars ($20,000.00) representing the full amount of defendant's policy into court.

10. Sometime between October 19, 1976 and November 11, 1976, intervener insurer sent subrogation notices to the defendant's insurer (Exhibit 9).

11. On March 31, 1977, Petition to Intervene was filed on behalf of Government Employees Insurance Company.

12. On August 29, 1977, Dairyland Insurance Company received the final subrogation notice and indicated the money had been paid into Court to discharge the lien (Exhibit 10)."

On April 13, 1978, the court entered an order indicating that GEICO would receive $18,738.55 from the fund. The remaining $1,261.45 was to be divided among the individual plaintiffs. The plaintiffs' request that plaintiffs' attorneys be awarded attorneys' fees for the creation of the fund was denied. A second stipulation of fact was filed by the parties on April 20, 1978, which indicated that GEICO had paid a total of $18,738.55 to the individual plaintiffs under the Sobczak policy.

On May 8, plaintiffs filed a "motion to reconsider" the issue of attorneys' fees for plaintiffs' attorneys, based on the attorneys' creation of the fund. This motion was based upon an affidavit of the attorney for Dairyland Insurance Company. In pertinent part the attorney's affidavit reads:

"* * *, being first duly sworn, says:

1. He is the attorney representing the defendant, Michael E. Whitten, and the defendant's insurance company, Dairyland Insurance Group, in reference to the above styled matter.

* * *

5. On or about November 18, 1976, as defendant's attorney, he confirmed the understanding between plaintiffs' attorney and defendant's insurer that the insurer's policy be tendered into court and that the defendant be dismissed by way of the Covenant Not to Sue and that said policy be tendered into court within ten (10) days from December 19, 1976.

6. On or about December 20, 1976, within the ten (10) days requested by plaintiffs' attorney, he, as attorney for the defendant, deposited Twenty Thousand Dollars ($20,000.00) presenting the full amount of defendant's policy into court.

7. He did settle this case by way of a Covenant Not To Sue and did tender the policy into court solely on the basis of his communications with plaintiffs' attorney and plaintiffs' attorney's efforts to settle and as a result of his agreement to settle this matter with the plaintiffs' attorney."

On June 12, 1978, the court granted plaintiffs' motion to reconsider and entered a new order of disbursement which did not change the awards of the individual plaintiffs. This new order awarded $6,246.18 to plaintiffs' attorney as fees for creating the fund. Consequently, GEICO received the remaining $12,492.37, by way of subrogation, rather than the award of $18,738.55 ordered by the court in its original judgment.

GEICO first alleges that the trial court erred in granting plaintiffs' motion to reconsider. GEICO contends that the motion was in fact an untimely motion for a new trial, that the motion was based on the affidavit of the attorney for defendant and Dairyland, which constituted newly discovered evidence not properly considered by the court and which improperly recited facts "on information and belief," not personally known to the affiant.

Section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 68.3) reads as follows:

"(1) In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a

motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief.

(2) A motion filed in apt time stays execution."

● 1, 2 A careful reading of plaintiffs' motion clearly demonstrates that, substantively, it is a motion to vacate. The character of a pleading is determined from its content, not its label. (*Eden v. Eden* (1975), 34 Ill. App. 3d 382, 340 N.E.2d 141.) Since the motion was filed within 30 days of the entry of judgment, we believe that it was properly considered by the trial court.

■■ Aside from certain conclusory allegations contained in the affidavit, GEICO concedes that the affidavit contains no information that was not already properly admitted on stipulation. Any error occasioned by the statements made upon information and belief was thus clearly harmless. Furthermore, GEICO's position that the affidavit constituted newly discovered evidence directly contradicts its assertion that "* * * the information contained in the affidavit had already been presented to the court through the stipulations of fact which were submitted."

■ GEICO next contends that the trial court incorrectly applied the "fund doctrine" in awarding attorney's fees from the sum awarded to GEICO as plaintiffs' subrogee. We disagree. The fund doctrine was adopted by our supreme court in *Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100. The doctrine was described by the court as follows:

"[W]here a fund has been created as the result of legal services performed by an attorney for his client, and a subrogee of the client, who has done nothing to aid in creating the fund, seeks to benefit therefrom, the attorney is entitled to a fee from the subrogee in proportion to the benefit received by the subrogee." 66 Ill. 2d 119, 124.

■ GEICO asserts that the fund doctrine does not apply here because it realized no actual benefit from the attorney's services as liability was clear and payment by defendant was certain. In this case the injury to plaintiffs occurred on August 22, 1976. On September 22, 1976, plaintiffs' complaint was filed. It appears from the record that while liability was contested in the defendant's answer to the plaintiffs' complaint, the defendant intended to settle from the suit's inception. However, it is apparent that negotiations were required to bring the defendant's intentions to fruition, as ancillary legal action was evidently anticipated, and the defendant wanted to minimize his exposure to liability in such action. It was only after agreement on those issues was reached, and after plaintiffs documented the extent of their injuries to the defendants, that the settlement occurred. The record does not support GEICO's position that the settlement was a foregone conclusion at the time the suit was filed. We believe

that the trial court was correct in its determination that plaintiffs' counsel played a substantial role in securing the settlement.

Finally, GEICO contends that the award of attorney's fees was excessive. Plaintiffs' attorneys were awarded an amount equalling one-third of GEICO's interest in the money paid into court. GEICO submits that the award of attorney's fees should properly have depended upon consideration of all the circumstances, including the nature of any contract existing between plaintiffs and their attorneys, the amount and nature of the services rendered, and the complexity of the litigation. However, the record before us is devoid of information as to how the trial court arrived at the award. On the record before us we cannot determine the propriety of the award and therefore render no opinion as to its excessiveness.

For the foregoing reasons, this cause is affirmed in part, reversed in part and remanded to the circuit court of St. Clair County for proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

JONES and KARNS, JJ., concur.