[No. B011527. Second Dist., Div. Five. Feb. 6, 1986.]

BRENT M. BERMAN, Plaintiff and Appellant, v.
RCA AUTO CORPORATION et al., Defendants and Respondents.

COUNSEL

Gilbert, Kelly, Crowley & Jennett and James G. Lewis for Plaintiff and Appellant.

Donald C. Erickson, John W. Evans, Joyce Helack and Erickson & Agan for Defendants and Respondents.

## OPINION

**ASHBY, Acting P. J.**—Appellant Brent M. Berman appeals from the trial court's dismissal of his suit against RCA Auto Corporation following the grant of a demurrer without leave to amend. The trial court granted RCA's demurrer to a complaint filed by Berman alleging malicious prosecution. The basis of the court's decision was that the dismissal of the prior suit, brought by RCA against Berman, on the ground that no cause of action was stated was not a favorable termination for malicious prosecution purposes.

In the prior suit RCA sued several defendants in federal court. Berman was the attorney for one of the defendants, Speight Buick. While the suit was pending, RCA sought an attachment order against Speight Buick. During oral argument on the attachment application Berman represented to the court that Speight Buick had not transferred its assets and had no plans to do so. A few months later RCA amended its federal court complaint to allege that Berman's representations to the court were false and that RCA

was damaged by them. Berman brought a motion to dismiss the new cause of action on the ground the statements made to the trial court were privileged under California Civil Code section 47, subdivision 2, and could not form the basis for the cause of action asserted against him by RCA. The federal district court agreed and dismissed Berman from the suit. Berman filed the present suit against RCA for malicious prosecution and emotional distress.

"The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. . . . In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action . . . and for mental or emotional distress [citation]. [¶] The judicial process is adversely affected by a maliciously prosecuted cause not only by the clogging of already crowded dockets, but by the unscrupulous use of the courts by individuals '. . . as instruments with which to maliciously injure their fellow men.' [Citation.]" (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50-51 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878], fn. omitted.)

The plaintiff in a malicious prosecution suit must plead and prove that the prior judicial proceeding which is the basis of the suit terminated in plaintiff's favor. (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 845 [92 Cal.Rptr. 179, 479 P.2d 379].) Plaintiff need not show a verdict or a final determination on the merits; legal termination will suffice. (*Lackner* v. *LaCroix* (1979) 25 Cal.3d 747, 750 [159 Cal.Rptr. 693, 602 P.2d 393].) The termination, however, must reflect on the merits of the underlying action. (*Ibid.*) It has been said that to be favorable a termination must reflect on the innocence of the accused party with respect to the alleged wrongful conduct. Furthermore, if the termination does not relate to the merits, i.e., if the termination does not reflect on the innocence of the party or the responsibility for the alleged misconduct, the termination is not favorable and would not support a malicious prosecution action. (*Id.*, at p. 751.)

RCA's position is that a termination on the ground of absolute privilege does not at all reflect upon the substantive merit of the alleged claim. RCA likens the dismissal for absolute privilege to a dismissal on the ground of laches, which has been held not to reflect on the alleged wrongfulness of the defendant's conduct (*Asia Investment Co.* v. *Borowski* (1982) 133 Cal.App.3d 832, 838 [184 Cal.Rptr. 317, 30 A.L.R.4th 561]); and to a dismissal on statute of limitations grounds, which has been held to be a "technical or procedural as distinguished from a substantive termination." (*Lackner* v. *LaCroix, supra,* 25 Cal.3d at p. 751.) Berman contends that

the absolute privilege of Civil Code section 47, subdivision 2, is a substantive rather than procedural defense.

Substance and procedure are not static legal concepts. "[A] statute or other rule of law will be characterized as substantive or procedural according to the nature of the problem for which a characterization must be made." (*Grant* v. *McAuliffe* (1953) 41 Cal.2d 859, 865 [264 P.2d 944, 42 A.L.R.2d 1162].) "'As a general rule, laws which fix duties, establish rights and responsibilities among and for persons . . . are "substantive laws" in character, while those which merely prescribe the manner in which such rights and responsibilities may be exercised and enforced in court are "procedural laws."'" (*Vienna* v. *California Horse Racing Bd.* (1982) 133 Cal.App.3d 387, 394 [184 Cal.Rptr. 64], citing Black's Law Dict. (5th ed.) p. 1083, col. 2.)

■ Civil Code section 47, subdivision 2, "states the long-established rule that publications made in the course of a judicial proceeding are absolutely privileged." (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 379 [295 P.2d 405].) The privilege is a limitation upon liability. (*Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 389 [182 Cal.Rptr. 438].) When a publication is absolutely privileged, there is no liability, even though it is made with actual malice; malice is not a proper subject of inquiry in such a case. (*Gosewisch* v. *Doran* (1911) 161 Cal. 511, 514-515 [119 P. 656]; *Lebbos* v. *State Bar* (1985) 165 Cal.App.3d 656, 667 [211 Cal.Rptr. 847].) "Underlying the recognition of this privilege is the important public policy of affording the utmost freedom of access to the courts." (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 641 [99 Cal.Rptr. 393].)

■ While the privilege created by section 47, subdivision 2, bears some similarity to procedural defenses, e.g., usually the privilege must be raised by the defendant (*Tschirky* v. *Superior Court* (1981) 124 Cal.App.3d 534, 538 [177 Cal.Rptr. 357]), the absolute protection from liability it provides makes the privilege quite unlike the procedural defenses. Procedural defenses are designed to protect the integrity of the judicial system; they are rules by which lawsuits are tried. Procedural defenses do not absolutely shield a defendant from liability. For example, a statute of limitations defense may prevent a particular cause of action from being pursued by a plaintiff, but will not bar an alternative cause of action which has a longer statutory period. As noted by the court in *Lackner* v. *LaCroix, supra*, 25 Cal.3d at page 751, the principle of revival by acknowledgment permits the renewal of a debt otherwise barred by the statute of limitations. Furthermore, a personal jurisdiction defense is available on the condition that the defendant not be found within the court's jurisdiction.

Section 47, subdivision 2, privilege, on the other hand, creates an immunity. (See Prosser & Keeton on Torts (5th ed. 1984) § 16, p. 109.) It is a bar to liability designed to protect the rights of the individual speaker, to insure that nothing will impede the individual's access to the courts. The privilege focuses not on the timing or the manner of a lawsuit, but solely on the defendant. Furthermore, the privilege at issue is created by the Civil Code, division first, part 2, entitled Personal Rights. We find that the absolute privilege of section 47, subdivision 2, is a substantive defense. We turn to the issue of whether a termination which follows from the assertion of this privilege is a favorable termination for malicious prosecution purposes.

As the court in *Minasian* v. *Sapse* (1978) 80 Cal.App.3d 823, 827 [145 Cal.Rptr. 829], reasoned, whether a termination tends to indicate the innocence of the defendant depends on whether the manner of termination reflects on the merits. Sometimes, the court noted, the manner reflects the opinion of the court that the action lacks merit, as where a criminal matter is dismissed for lack of evidence. Sometimes the termination reflects the plaintiff's opinion that the action would result in a favorable decision for a defendant, as where the plaintiff voluntarily dismisses. In this instance the termination reflects the opinion of the Legislature that the action lacks merit because the protection of the right of an individual's access to the courts outweighs an individual's right to a civil remedy for harm resulting from misrepresentations made at a judicial proceeding. The fact that this is a general assessment of suits of this type rather than the individual assessment of a particular case does not mean it is not a reflection on the merits of the action. The Legislature has in effect said that suits based on privileged statements are suits which are without merit.

There is also a public policy which supports the holding that a dismissal based on the absolute privilege of section 47, subdivision 2, is a favorable termination for malicious prosecution purposes. Those who speak at judicial proceedings could be harassed by having to defend against suits based on their privileged publications, at least to the extent that they would have to hire an attorney to raise the privilege by answer or demurrer until the case was dismissed, with no way of being compensated and no means of dissuading plaintiffs from bringing unmeritorious suits. This burden on an individual's time, emotional well-being and finances could chill the exercise of the very right of access to the courts that section 47, subdivision 2, seeks to protect.

We find that the dismissal of a suit on the ground that defendant's statement is privileged is a favorable termination for malicious prosecution pur-

poses. The trial court erred in holding that the dismissal of the federal suit was not a favorable termination.

The judgment is reversed.

Hastings, J., and Eagleson, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 30, 1986.