**Lisa JOHANSEN, Plaintiff,**

v.

**Priscilla PRESLEY, Navarone Girabaldi, Elvis Presley Enterprises, Inc., and CKX, Inc., Defendants.**

**Case No. 2:11–cv–03036–JTF–dkv.**

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 2, 2013.

Lisa Johansen, Ft. Lauderdale, FL, pro se.

William R. Bradley, Glankler Brown, PLLC, Memphis, TN, for Defendants.

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ORDER GRANTING DEFENDANTS CORE MEDIA GROUP'S AND ELVIS PRESLEY ENTERPRISES' MOTION TO DISMISS ORDER DENYING DEFENDANTS CORE MEDIA GROUP'S AND ELVIS PRESLEY ENTERPRISES' MOTION FOR SUMMARY JUDGMENT AS MOOT ORDER DENYING PLAINTIFF'S MOTION TO STRIKE**

JOHN T. FOWLKES, JR., District Judge.

Before the Court is Defendants Core Media Group's f/k/a CKX, Inc. ("CKX") and Elvis Presley Enterprises' ("EPE") Motion to Dismiss, or, in the Alternative, for Summary Judgment, pursuant to Fed. R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 56, respectively, filed on December 5, 2012. (D.E. # 38). On December 19, 2012, Plaintiff Lisa Johansen filed her Response in Opposition to Defendants' Motion and also her Motion to Strike Defendants' Motion. (D.E. # 39). Defendants filed a Response to Plaintiff's Motion to Strike, on December 28, 2012. (D.E. # 40). Defendants also filed a Reply in Further Support of their Motion to Dismiss or for Summary Judgment, on January 2, 2013. (D.E. # 41). On June 4, 2013, Defendants' Motion was referred to the Magistrate, pursuant to 28 U.S.C. §§ 631–39. (D.E. # 60). On June 27, 2013, the Magistrate entered her Report and Recommendation recommending Defendants' Motion to Dismiss or Summary Judgment be granted. (D.E. # 80). Plaintiff filed her Objections

to the Magistrate's Report and Recommendation, on July 3, 2013. (D.E. # 86).

The Court has reviewed the Magistrate Judge's Report and Recommendation, the Magistrate's legal analysis, Defendants' Motion, Plaintiffs' Response, Plaintiffs' Objections, and the entire record. Finding the Magistrate's analysis of the relevant case authorities and application of facts persuasive, the Court hereby ADOPTS the Magistrate's Report and Recommendation. Thus, Defendants CKX's and EPE's Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED. Defendants' Motion for Summary Judgment, pursuant to Fed.R.Civ.P., is DENIED as MOOT. Furthermore, Plaintiff's Motion to Strike is DENIED.

## I. *LEGAL STANDARD*

A district judge has the discretion to refer dispositive matters to a magistrate judge to conduct a hearing and propose findings of fact and recommendations. 28 U.S.C. § 636(b)(1)(B) ("[A] judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by the judge of court, of any motion excepted in subparagraph (A) [for which a motion to dismiss or quash an indictment or information made by the defendant is included]"). The district court judge has the authority to review the magistrate judge's proposed findings of fact and recommendations under a de novo determination. *See* 28 U.S.C. § 636(b)(1)(C); *See e.g. Baker v. Peterson,* 67 Fed.Appx. 308, 311 (6th Cir.2003) ("A district court normally applies a 'clearly erroneous or contrary to law' standard of review for nondispositive preliminary measures. A district court must review dispositive motions under the *de novo*

standard."); *U.S. v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (quoting *Mathews v. Weber,* 423 U.S. 261, 275, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976) ("in providing for a 'de novo determination.' Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations."))

## II. *ANALYSIS*

### A. Magistrate Judge properly recommended that Defendants CKX's and EPE's Fed.R.Civ.P. 12(b)(6) Motion to Dismiss should be granted

The Magistrate properly recommended that Defendants CKX's and EPE's Motion to Dismiss Plaintiff's Counts II, III, IV, and V, for failure to state a claim upon which relief can be granted under Fed. R.Civ.P. 12(b)(6), should be granted. Furthermore, the Court believes the Court properly found that: (1) California law applies in this case; (2) the litigation privilege stating "the long-established rule that publications made in the course a judicial proceeding are absolutely privileged," Cal. Civ.Code § 47(b), applies in this case; and (3) Plaintiff fails to establish the necessary publication element to prove her alleged defamation claims against Defendants.

Plaintiff filed her Objection to the Magistrate's Report and Recommendation on July 3, 2013. (D.E. # 80). Because of the history and number of motions filed in this case, the Court finds it necessary to address each of Plaintiff's objections individually. First, Plaintiff objects to the Magistrate's recommendation that the litigation privilege exists, because Plaintiff argues that no lawful client relationship existed between the Defendants and Defendant Navarone Garibaldi's attorney Martin Singer. However, as explicated in the footnote 7 of the Magistrate's Report and Recommendation,

> For purpose of deciding the motion to dismiss with respect to the Litigation privilege, the court treated as true [Plaintiff's] allegation that Singer sent the August 16, 2011 [letter] on behalf of ***all the defendants.*** Because it is recommended that the motion to dismiss be granted, the court has not addressed [Defendants'] alternative motion for summary judgment based on their assertions that [Singer] was not their attorney.

(D.E. # 80, p. 885)(emphasis added).

Therefore, taking the facts in the light most favorable to Plaintiff, the Magistrate proceeded through the proper analysis to find that the litigation privilege, under California law, applies in this case. The Court is perplexed by Plaintiff's new contentions that suggestions that Defendants had no attorney-client relationship with Mr. Singer. In Plaintiff's Response to Defendant's Motion to Dismiss or for Summary Judgment, she states that "Defendant have admitted to having the defamatory letter written by Mr. Singer on their behalf, and also repeatedly confessed that it was sent by Mr. Singer directly to Plaintiff's daughter." (D.E. # 39–2, ¶ 10). However, in Plaintiff's Objections she argues that, "[t]he conclusion that litigation privilege applies is erroneous since there exists no *lawful* client relationship between the Defendants and Mr. Singer." (D.E. # 85, p. 1).

Although Plaintiff raises the lack of lawful client relationship argument for the first time, the Court will address Plaintiff's Objection. Plaintiff is correct; there is no attorney-client relationship between Mr. Singer and Defendants CKX and EPE. Defendants CKX and EPE were not parties to Mr. Singer's August 16, 2011 letter to Plaintiff's daughter, and, thus, are not

liable for the alleged acts that are connected to the letter. As the Magistrate appropriately stated in her Report and Recommendation, "Singer was not the agent of CKX and EPE, and CKX and EPE cannot be held vicariously liable for Singer's action." (D.E. # 80, p. 885 n. 7). Consequently, Plaintiff's objection to the Magistrate's findings regarding the litigation privilege is overruled.

Second, Plaintiff argues that the Magistrate's findings are premature because her Motion for Leave to Amend (D.E. # 65) had not been ruled upon yet. After the Magistrate filed her Report and Recommendation, but before this Court examined the Magistrate's findings, the Magistrate filed an Order Denying Plaintiff's Motion. (D.E. # 91). Thus, Plaintiff's Objection is overruled as moot.

Third, Plaintiff contends that the Magistrate did not adhere to the proper legal standard for a motion to dismiss. Plaintiff argues that the facts were not construed in the light most favorable to her. Additionally, she argues that she has been unable to file important information that would corroborate her Complaint. The Court assumes that Plaintiff is referring to the Magistrate's Order Denying Plaintiff's Motion to Amend Factfinding and Judgment. (D.E. # 70). Plaintiff correctly asserts the standard for a Fed.R.Civ.P. 12(b)(6) motion to dismiss: "Th[e] [c]ourt construes the complaint in a light mot favorable to the plaintiff, accepts the factual allegations as true, and determines whether the complaint states a plausible claim for relief." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir.2012). However, Plaintiff fails to address one important prong to the standard for a motion to dismiss—the determination of whether a complaint raises a plausible claim. To satisfy this prong, "[a] plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Albrecht v. Treon*, 617 F.3d 890 (6th Cir.2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Here, even if the facts were read in the light most favorable to Plaintiff and accepted as true, Plaintiff's Complaint does not state a plausible claim for relief. No evidence has been presented to this Court for it to find that Plaintiff's Complaint has risen above the level of speculation or mere suspicion. Thus, Plaintiff's Objection is overruled for insufficient evidence.

Fourth, Plaintiff argues that the Court is not treating her the way it would a "normal" *pro se* plaintiff. Plaintiff argues that because she is a European lawyer and not a lawyer trained under the laws of the United States, she should not be held to a prejudicial standard that differentiates her from other *pro se* litigants. Specifically, she alleges that,

> [T]he Honorable Magistrate Judge emphasized at the hearing that Plaintiff as all her *pro se* litigants were required to familiarize themselves to the rules of procedure, while at the same time holding that Plaintiff would not be shown lenience as a *pro se* but treated as an attorney.

(D.E. # 86, p. 2). Although Plaintiff is a foreign *pro se* attorney, she possesses a greater propensity and aptitude to comprehend the legal proceedings and applicable laws than a non-attorney *pro se* litigant would. *See Brautigam v. Damon*, No. 11–551, 2012 WL 481844, at n. 9 (S.D.Ohio Feb. 14, 2012) ("*pro se* attorney plaintiffs are 'not automatically subject to the very liberal standards afforded to a non-attorney pro se plaintiff because an attorney is presumed to have knowledge of the legal system and needs less protections from the court.'" (quoting *Richards v. Duke Uni-*

*versity,* 480 F.Supp.2d 222, 234 (D.D.C. 2007))). Even if Plaintiff's claims were given the leniency afforded to *pro se* litigants, the Magistrate's analysis and recommendation stands nonetheless. Therefore, Plaintiff's Objection is overruled.

Last, Plaintiff objects to the Magistrate's finding that California law governs the claims in this case. Plaintiff reiterates her allegations from previous filings: 1) the injury took place in Memphis; 2) Defendants' offensive behavior is based upon "their violation of racketeering laws on the very grounds that they have stolen from Plaintiff, i.e. Plaintiff's childhood home" (D.E. #86, p. 2); 3) Defendant's kept strict surveillance on and intimidated Plaintiff and her daughter during their visit to Graceland, which was admitted by the staff at Graceland; and 4) Defendants delivered the August 16, 2011 letter to Plaintiff's daughter—not Plaintiff—which is evidence of defamatory actions. Plaintiff has previously raised all of these arguments in her motion practice, and the claims were appropriately addressed, ruled on, and/or recommended for denial by the Magistrate. The Magistrate is correct in finding that the alleged tortious conduct that forms the basis of Plaintiff's defamation and libel claims occurred in California. Consequently, Plaintiff's Objection is overruled.

### B. Plaintiff's Motion to Strike is denied.

On December 19, 2012, Plaintiff filed her Memorandum of law in support of Plaintiff's Motion to Strike, which served as both a response to Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment and as a motion to strike Defendants' Motion. (D.E. #39). Specifically, Plaintiff argues that "[i]n admitting being served accordingly to Plaintiff's holding and being in default, Defendants' motion is untimely and Plain-tiff considers it as an attempt to obstruct the procedural rules of court." (D.E. #39–2, ¶6).

■ Fed.R.Civ.P. 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A "pleading," as defined by Fed.R.Civ.P. 7(a) is: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Generally, motions to strike are disfavored by the court. *See Scott v. The Dress Barn, Inc.,* 2006 WL 870684, *1, No. 04–1298–T/AN (W.D.Tenn. Mar. 31, 2006).

Defendants CKX's and EPE's Motion to Dismiss serves as their answer to Plaintiff's Complaint, thus, a motion to strike would be an appropriate remedy if Defendants' Motion were found to be insufficient, immaterial, impertinent, or scandalous. However, Defendant's Motion is sufficient and material to the pleadings in this matter. Additionally, Defendant's Motion is timely, as evident from this Court's September 19, 2012 Order Granting in Part and Denying in Part the Motion to Dismiss filed by CKX and EPE and Order Directing Plaintiff to Serve CKX and EPE. (D.E. #33). In the Order, this Court "denie[d] the motion to dismiss Counts II through V WITHOUT PREJUDICE to the right of CKX and EPE to renew that motion." (D.E. #33, p. 9). The Order also required Plaintiff to serve Defendants CKX and EPE within sixty days of the entry of the Order. On November 2, 2012, the Clerk's Office received notice that the Defendants were properly served on November 15, 2012. (D.E. #37). Defendants timely renewed their Motion to Dismiss on Decem-

878

ber 5, 2012. Therefore, without evidence showing the Defendants' Motion meets the necessary requirements to be stricken, Plaintiff's Motion to Strike is DENIED.

### III. *CONCLUSION*

For the reasons set forth above, the Court Adopts the Magistrate Judge's Report and Recommendation to Grant Defendant's Motion to Dismiss. Therefore, Defendants CKX's and EPE's Motion to Dismiss is GRANTED. Alternatively, Defendants' Motion for Summary Judgment is DENIED as MOOT. Furthermore, Plaintiff's Motion to Strike is DENIED. Plaintiff's Complaint is DISMISSED with prejudice as to Defendants CKX and EPE.

REPORT AND RECOMMENDATION ON MOTION OF CORE MEDIA GROUP AND ELVIS PRESLEY ENTERPRISES, INC. TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

DIANE K. VESCOVO, United States Magistrate Judge.

Before the court is the December 5, 2012 motion of the two corporate defendants, Core Media Group f/k/a CKX, Inc. ("CKX") and Elvis Presley Enterprises ("EPE"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the remaining state-law claims in the amended complaint, specifically Counts II, III, IV, and V, for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment pursuant to Rule 56. (D.E. 38.) Johansen filed a response in opposition, (D.E. 39), and CKX and EPE filed a reply, (D.E. 41). This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Order of Referral, D.E. 60.)

For the reasons that follow, it is recommended that CKX and EPE's motion be granted.

### I. PROPOSED FINDINGS OF FACT

For purposes of this motion to dismiss, the court accepts the following facts as true:

On November 21, 2011, the plaintiff, Lisa Johansen, then a resident of Sweden, filed a *pro se* complaint entitled "Complaint for Damages for Violation of U.S.Code Section 1512, Libel per se, Libel, Intentional Infliction of Emotional Distress, Conspiracy, and Civil Penalties." (D.E. 1.) Named as defendants were Core Media Group f/k/a CKX, Inc. ("CKX"), Elvis Presley Enterprises ("EPE"), Priscilla Presley, and Navarone Garibaldi. The original complaint sets forth five causes of action: (1) violation of U.S.Code Title 18, Section 1512; (2) libel per se; (3) libel; (4) intentional infliction of emotional distress; and (5) conspiracy. Johansen paid the filing fee, and summonses were provided to her on November 22, 2011. On December 28, 2011, Johansen filed a motion to amend her complaint to correct a one-word mistake in paragraph 23, which motion the court granted on February 14, 2012. Johansen filed her amended complaint on March 7, 2012. (Am. Compl., D.E. 16.)

Johansen claims that the she is the "real" Lisa Marie Presley and that she has been the victim of fraud and identity theft for more than twenty years:

Plaintiff has for a period of time exceeding 20 years put forth claims and collaborating evidence that she has been a victim of fraud and identity theft. In coherence with that claim also that she by birth is the rightful and only person known as Lisa Marie Presley and subsequently that there is a person wrongful-

ly using her identity in public. In 1999, a book was published relating much of Plaintiff's claim in which pictures of Elvis Presley was [sic] used as well as his name. Despite this publication Plaintiff has been, upon request, in contact with Presley's family ever since.

(Am. Compl., D.E. 16 ¶ 14.) This lawsuit arises from a letter, dated August 16, 2011, written by Martin Singer, a California attorney, addressed to Michael Maroko, Esq., a California attorney allegedly representing all the defendants, responding to a claim asserted by Johansen's daughter, Emma Love Presley, concerning treatment she received while visiting Graceland with her mother, Johansen, around the anniversary of Elvis's death in August of 2011. As Johansen states in her complaint:

> This complaint arises out of the abhorrent, despicable and wrongful actions taken by the Defendants in order to prepare and in sending, on August 16 a letter ("letter")(exhibit 2) by way of counsel Mr. Martin Singer ("Singer"), in response of communication from Plaintiff and Plaintiff's daughter ("daughter") (age 17) concerning misconduct. The letter was by necessity delivered to Plaintiff's daughter.

(Am. Compl., D.E. 16 at 4.) Attached to the original complaint is a heavily redacted copy of the letter. (Ex. 2 to Compl., D.E. 1–2.) Johansen alleges that "[t]he letter was opened and red [ sic] by Plaintiff's daughter the same day and thereafter gave it to Plaintiff." (Am. Compl., D.E. 16 at 5.) Johansen alleges that the "defendants issued false and libelous statements . . . to Plaintiff's daughter and her daughter's counsel." (Id. at 7–8.) She further states that "the substantial part of the unlawful acts and conduct alleged in this complaint occurred in Shelby County." (Id. at 3.) Johansen alleges that the letter caused her severe emotional distress, (id.

at 8), and she seeks special damages in excess of $360,000, and/or general damages in excess of $10,000,000, and punitive damages for each of the four remaining tort claims, (id. at 11).

On February 28, 2012, CKX and EPE filed a motion to dismiss for ineffective service of process and for failure to state a claim. By order dated June 14, 2012, the court found that Johansen had not properly served CKX and EPE and ordered Johansen to serve them within sixty days of the date of the order. (Order, D.E. 33.) The court also dismissed with prejudice Johansen's first cause of action, violation of 18 U.S.C. § 1512, a federal criminal statute that prohibits tampering with witnesses, victims, and informants, because the criminal statute did not give rise to a private civil cause of action. (Id.) The court denied CKX's and EPE's motion to dismiss the four remaining tort causes of action without prejudice because the motion did not address choice-of-law issues and did not identify the substantive law to be applied.

CKX and EPE have now renewed their motion to dismiss the four remaining state-law claims for failure to state a claim upon which relief can be granted. Attached to CKX and EPE's motion is the Declaration of Jonathan Seiden who is the Vice President and Director of Intellectual Property of CKX and counsel for EPE. (Seiden Decl., D.E. 38–3). Seiden states under oath that it is his understanding that "Lisa Johansen retained the California law firm of Allred, Maroko & Goldberg to assert a claim against Navarone Garibaldi who is the son of Priscilla Presley;" that Garibaldi retained Singer to act as his attorney and to respond to Johansen's demand; and that Singer was not retained by or acting on behalf of CKX and EPE when he sent the August 16, 2011 letter. (Id.)

Attached to Johansen's response to the motion to dismiss is a Declaration of Facts by Miss Emma Love Johansen, the daughter of the plaintiff. (Emma Johansen Decl., D.E. 39-4.) In her declaration, Emma Love Johansen confirms, under penalty of perjury, that Maroko, acting as her attorney, sent a letter on August 3, 2011, to Garibaldi; that Singer, an attorney, answered Maroko's letter with his letter of August 16, 2011, which she received by e-mail while in Memphis, Tennessee; that Maroko sent the letter to her and only her; and that after reading the e-mail she felt "obligated to, against [her] will, hand it over to [her] mother since it also was addressed to her and also since the letter contained matters concerning [her] mother." (Emma Johansen Decl., D.E. 39-4, at 2–3.) Attached to the original complaint is an e-mail string which reflects an e-mail from Chris Weddell on behalf of Singer to Maroko on August 16, 2011 at 4:34 p.m. with a letter attached; an e-mail from Maroko forwarding the letter to Emma Johansen on August 16, 2011 at 5:13 p.m.; and an email from Emma Johansen to Maroko on August 17, 2011 at 3:16 a.m. acknowledging receipt of the letter and stating "Ok thank you! I will have mother to read it right away." (Ex. 8 to Compl., D.E. 1–8.)

## II. PROPOSED CONCLUSIONS OF LAW

As grounds for their motion to dismiss, CKX and EPE assert that Johansen's complaint fails to state a claim against them because, as a result of the litigation privilege, they have absolute immunity from the remaining claims asserted against them, and, in addition, Johansen's complaint fails to allege that any of the defendants published the alleged defamatory statement. In the alternative, CKX and EPE seek summary judgment on the same grounds, and, in addition, assert that neither of them can be held vicariously liable for alleged defamatory statements contained in a letter from an attorney who did not represent them.

### A. Standard for Dismissal under Rule 12(b)(6)

To survive Rule 12(b)(6) dismissal following the United States Supreme Court's opinions in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a complaint must " 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629 (6th Cir.2009) (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 611 (6th Cir.2012). However, "pleadings that ... are no more than conclusions[ ] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937; see also Twombly, 550 U.S. at 555 n. 3, 127 S.Ct. 1955 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams v. Curtin, 631 F.3d 380, 383 (6th Cir.2011) (inter-

nal quotation marks omitted). However, even though Johansen is proceeding pro se, according to her complaint she "has a Degree of Masters of Laws from Uppsala University and is ... eligible to act as a lawyer" under Swedish law. (Am. Compl., D.E. 16 ¶ 22.) In addition, *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir.1989); *see also Brown v. Matauszak,* 415 Fed.Appx. 608, 613 (6th Cir.2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.,* 73 Fed.Appx. 836, 837 (6th Cir.2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R.Civ.P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford,* 542 U.S. 225, 231, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson,* 423 Fed.Appx. 506, 510 (6th Cir.2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.")

## B. *Choice of Law*

Because this case is in federal court, the threshold question the court must resolve to decide this motion is what substantive law applies. CKX and EPE insist that California law should be applied to determine if the litigation privilege provides absolute immunity to the defendants. Johansen argues that Tennessee law should apply because the injury occurred in Memphis, Tennessee, where both she and her daughter were "located when the injury occurred and the libel about Plaintiff was published to Plaintiff's daughter."[1] (Pl.'s Mem. of Law in Supp. of Pl.'s Mot. to Strike D.E. 39–2 at 9.)

■■■ Jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. In a conflict-of-laws analysis in a diversity case, a federal court applies the choice-of-law rules or conflict rules of the forum state, in this case, Tennessee. *Cole v. Mileti,* 133 F.3d 433, 437 (6th Cir.1998) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). In tort personal injury actions, Tennessee adheres to the "most significant relationship" approach, which provides: "In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship." *Hataway v. McKinley,* 830 S.W.2d 53, 59 (Tenn.1992). In determining which state has the most significant relationship, Tennessee courts consider seven principles: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied. *Id.* n. 3; *Arvest Bank v. Byrd,* 814 F.Supp.2d 775, 789–90 (W.D.Tenn. 2011). "Contacts to be taken into account

---

1. None of the parties argue for the application of Swedish law. "A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." (D.E. 39–2 at 9.) Fᴇᴅ. R. Cɪᴠ. P. 44.1.

The court is therefore under no obligation to apply Swedish law. *Commercial Ins. Co. of Newark v. Pac.-Peru Constr. Corp.,* 558 F.2d 948, 952 (9th Cir.1977).

in applying these principles include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

The particular issue in question in this motion is the application of the litigation privilege between two California attorneys. Johansen does not indicate in her complaint where the alleged injury to her occurred, that is, where she was when she read the August 16, 2011 letter from Singer. In her response to the motion, Johansen claims that she and her daughter were in Memphis, Tennessee, when "the injury occurred and the libel about [her] was published to her daughter." (Pl.'s Mem. of Law in Supp. of Pl.'s Mot. to Strike, D.E. 39–2 at 9.) CKX and EPE do not dispute this but insist that the place of injury bears little relationship to the application of the litigation privilege. The court agrees.

Likewise, the residence, nationality, and domicile of the parties bears little relationship to the application of the litigation privilege. In her complaint, Johansen asserts she is a resident of Sweden but does not indicate her nationality or domicile.[2] Defendants Presley and Garibaldi are residents of California, defendant EPE is a Tennessee corporation, and CKX is a Delaware corporation.

The relationship of the parties for purposes of this lawsuit is centered in California through Maroko, Johansen's daughter's attorney, and Singer, Garibaldi's attorney. Although Johansen argues in her response to the motion to dismiss that the parties' relationship is centered in Memphis, Tennessee, at Graceland, (Pl.'s Mem. of Law in Supp. of Pl.'s Mot. to Strike, D.E. 39–2 at 10), the declaration of Johansen's daughter submitted in support of her response states that the issue between Garibaldi and her has nothing to do with "any Graceland issue" or with "CKX or EPE, Inc." (Emma Johansen Decl., D.E. 39–4 at 1.)

■ The alleged tortious conduct that forms the basis for Johansen's defamation and libel claims occurred in California. Maroko, a California attorney, was retained to represent Johansen's daughter to assert a claim against Garibaldi, a California resident.[3] Maroko wrote a letter to Garibaldi on August 3, 2011, and Garibaldi retained a California lawyer, Singer, to write a response to the letter. Singer sent the response letter on behalf of Garibaldi to Maroko via email on August 16, 2011. The place where the alleged tortious conduct occurred has the most significant relationship to the issue at hand, i.e., the application of the litigation privilege.

Based on an analysis of these contacts, California has the most significant relationship to the issue of the application of the litigation privilege. Application of California law on the litigation privilege would be consistent with the public policies of both Tennessee and California, both of which recognize the litigation privilege, and would be consistent with the justified expectations of two California attorneys who communicated with each other in the state of California. Accordingly, the court

---

**2.** In a recent hearing, Johansen stated to the court that her passport is issued by Finland.

**3.** The court assumes that Johansen retained Maroko to represent her daughter, Emma Love Johansen, who was a minor at the time.

will apply the substantive law of the state of California as to the litigation privilege.

## C. The Litigation Privilege

 Under California law, the litigation privilege is codified at California Civil Code § 47, subdivision b,[4] which "states the long-established rule that publications made in the course of a judicial proceeding are absolutely privileged." *Berman v. RCA Auto Corp.*, 177 Cal.App.3d 321, 323–25, 222 Cal.Rptr. 877 (Cal.Ct.App.1986). According to Section 47(b), "a privileged publication or broadcast is one made in (1) any legislative proceeding, (2) judicial proceeding, (3) in any other proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law." Cal. Civ.Code § 47(b). The privilege is absolute; it creates an immunity. *Silberg v. Anderson*, 50 Cal.3d 205, 215, 266 Cal.Rptr. 638, 786 P.2d 365 (Cal.1990); *Berman*, 177 Cal.App.3d at 323–25, 222 Cal.Rptr. 877. For the privilege to apply, the party claiming the privilege must show the communication was (1) "made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [it has] some connection or logical relation to the action." *Silberg*, 50 Cal.3d at 212, 266 Cal.Rptr. 638, 786 P.2d 365.

 As to the first factor, the litigation privilege extends to statements made prior to a lawsuit. *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal.4th 350, 7 Cal. Rptr.3d 803, 81 P.3d 244, 249 (2004) (recognizing the application of the privilege to statements made in preparation for or considering litigation); *Silberg*, 50 Cal.3d at 216, 266 Cal.Rptr. 638, 786 P.2d 365 (recognizing application of the privilege to communications outside the courtroom); *Hagendorf v. Brown*, 699 F.2d 478, 480 (9th Cir.1983) (applying privilege to alleged defamatory statements set forth in letters sent by attorney prior to litigation or any judicial proceeding). Here, Johansen alleges in her complaint that Singer, a California attorney representing the defendants, sent the August 16, 2011 letter in response to claims made by her daughter through Maroko, her daughter's attorney. The first *Silberg* prong is satisfied.

 The other *Silberg* prongs are satisfied as well. The communication, the August 16, 2011 letter, was made by Singer, an attorney, authorized to send the letter on behalf of his client, Garibaldi, and the communication logically related to a written complaint of misconduct and threatened litigation by Emma Love Johansen against Garibaldi, Singer's client, and the alleged defamatory statements were made to achieve the objects of the litigation. "California courts apply a liberal standard for establishing the required relationship." *Hagendorf*, 699 F.2d at 480. "Doubts are resolved in favor of relevancy." *Id.* Here, the alleged defamatory statements about the background and history of Johansen, the mother of the minor child, Emma Love Johansen, was relevant to any claim that Emma Love Johansen might assert against Garibaldi, who according to Johansen, is her half-brother. The statements were pertinent to dissuading Maroko from pursuing any claim against Garibaldi and the other defendants and avoiding any claim against Johansen, the mother of Emma Love Johansen. Accordingly, the court concludes that the California litigation privilege applies to the August 16, 2011 communication from Singer to Maroko, and the defendants are immune from suit based on the alleged defamatory statements made in the August 16, 2011 letter from Singer.

4. For convenience, the statute will be referred to as Section 47(b).

■ The litigation privilege applies to all tort causes of action, not just defamation, except the tort of malicious prosecution. *Hagberg,* 7 Cal.Rptr.3d 803, 81 P.3d at 247. Thus, the privilege applies not only to Johansen's causes of action for libel, but also to Johansen's claims for intentional infliction of emotional distress and civil conspiracy. *Silberg,* 50 Cal.3d at 215, 266 Cal.Rptr. 638, 786 P.2d 365 (recognizing the application of the litigation privilege to claims of intentional infliction of emotional distress); *Steiner v. Eikerling,* 181 Cal.App.3d 639, 643, 226 Cal. Rptr. 694 (Cal.Ct.App.1986) (recognizing that "the privilege contained in section 47 ... is an absolute defense to a cause of action in tort which does not sound in malicious prosecution, including 'Civil Conspiracy' "). Accordingly, the court concludes that the defendants in this lawsuit have absolute immunity from suit for the claims of libel, intentional infliction of emotional distress, and civil conspiracy set forth in Johansen's complaint.[5]

### D. Lack of Publication of the Alleged Defamatory Statement

■ In order to state a claim for defamation under California law, a plaintiff must show the intentional publication of "a statement of fact by the defendant that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado,* 72 Cal. App.4th 637, 645, 85 Cal.Rptr.2d 397 (Cal. Ct.App.1999). Publication is defined as "communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." *Id.* Johansen fails to allege in her complaint that any of the defendants published the August 16, 2011 letter to a third person. Rather, in response to the motion to dismiss, Johansen has come forward with the declaration of her daughter that states Maroko, her daughter's attorney, sent a letter on August 3, 2011 to Garibaldi; that Singer, an attorney acting on behalf of Garibaldi, answered Maroko's letter with his letter of August 16, 2011; that Maroko sent Singer's letter to her daughter and only her; and that after reading the email her daughter gave Singer's letter to Johansen to read. Thus, Johansen acknowledges that it was her daughter's own attorney who sent the allegedly defamatory letter to her daughter, and it was her daughter who published the allegedly defamatory letter to her. The publication of the communication to Johansen's daughter by her daughter's attorney, and the publication by her daughter to her is not sufficient to satisfy the element of publication in a defamation action; the publication must be made by the defendant. *Live Oak Publ'g Co. v. Cohagan,* 234 Cal. App.3d 1277, 1284, 286 Cal.Rptr. 198 (Cal. Ct.App.1991). Accordingly, the court concludes that Johansen has failed to state claims based on defamation against the defendants.[6]

## III. RECOMMENDATION

It is therefore recommended that CKX's and EPE's motion to dismiss pursuant to

---

**5.** If the court were to apply Tennessee substantive law on the litigation privilege, the result would be the same. *See Jones v. Trice,* 210 Tenn. 535, 360 S.W.2d 48, 54 (1962) (holding that a fair statement of the rule on litigation privilege in Tennessee to be "that statements made in the course of a judicial proceeding, if pertinent or relevant, are absolutely privileged, and this is true regardless of whether they are malicious, false, known to be false, or against a stranger to the proceeding"). "Relevance in libel cases means reasonably relevant to the judicial proceedings." *Id.*

**6.** If the court were to apply Tennessee substantive law on defamation, the result would be the same.

Rule 12(b)(6) for failure to state a claim be granted and the complaint against CKX and EPE be dismissed with prejudice.[7]

Respectfully submitted this 27th day of June, 2013.

7. For purposes of deciding the motion to dismiss with respect to the litigation privilege, the court treated as true Johansen's allegation that Singer sent the August 16, 2011 on behalf of all the defendants. Because it is recommended that the motion to dismiss be granted, the court has not addressed CKX's and EPE's alternative motion for summary judgment based on their assertions that Maroko was not their attorney. Seiden states in his affidavit that Singer was not retained by or acting on behalf of CKX and EPE when he sent the August 16, 2011 letter, and Johansen has produced no evidence to the contrary. Therefore, Singer was not the agent of CKX and EPE, and CKX and EPE cannot be held vicariously liable for Singer's action. *See Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 346 (Tenn.2002) (discussing law of agency in general and recognizing that in order for principal to be vicariously liable, an agency relationship must exist).